RECEIVED

JUL 2 2 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **HA TRAN** | **CIVIL ACTION NO. 04-2202** |
| | **SECTION P** |
| **VS.** | **JUDGE MELANÇON** |
| **JOHN ASHCROFT, ET AL.** | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Before the court is Ha Tran's petition for *habeas corpus* filed on October 22, 2004 pursuant to 28 U.S.C. §2241. Petitioner is in the custody of the Department of Homeland Security/Bureau of Immigration Customs Enforcement (BICE) and is presently detained at the St. Martin Parish Prison in St. Martinville, Louisiana. The respondents, United States Attorney John Ashcroft[1], BICE Commissioner James W. Ziglar, BICE Louisiana Field Officer Craig Robinson, and the Department of Homeland Security/Bureau of Immigration Customs Enforcement, have filed a sealed Response [rec. doc. 11], to which petitioner has filed a Reply. [rec. doc. 16].

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

---

[1]Since the filing of the instant petition, Alberto Gonzalez has been confirmed as the United States Attorney General.

## STATEMENT OF THE CASE

In the instant petition, Tran claims that his continued and indefinite detention under 8 U.S.C. §1231(a)(6) violates the principles set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Thus, Tran requests this court to order the respondents to release him under an order of supervision. Petitioner additionally contends that 8 C.F.R. §241.14 is unconstitutional.[2]

Petitioner is a native and citizen of Vietnam who entered the United States as a refugee on August 12, 1975. On September 20, 1978, Tran's status was adjusted to that of lawful permanent resident.

On October 24, 1984, Tran was convicted of an assault and a firearms possession charge in Dorchester, Massachusetts. As a result, he was confined for two years at the Bridgewater State Hospital for "mental health treatment." Thereafter, Tran was committed to a half-way house. Upon his release from that institution, Tran killed his wife. On May 22, 1989, Tran was convicted of manslaughter for which he was sentenced to serve 18-20 years imprisonment.

As a result of his criminal conviction for manslaughter, an aggravated felony, on February 2, 1998 Tran was ordered removed to either France or Vietnam. The order of

---

[2]In his original petition, Tran asserts that 8 C.F.R. §241.14 is unconstitutional because the regulation does not provide for court appointed counsel or for the appointment of medical experts to assist the detainee in review proceedings. However, in his reply to the respondent's arguments, Tran asserts that the regulation is unconstitutional as applied to him because fellow inmates were used to translate during petitioner's psychiatric examinations and because the medical examiners were afforded insufficient time and knowledge of petitioner's history, thus denying him procedural due process. He also asserts that his placement in jail as opposed to a treatment facility has denied him substantive due process. Because the undersigned concludes that petitioner's current detention is unauthorized under the United States Supreme Court's construction of 8 U.S.C. §1231(a)(6), these arguments are not addressed.

2

removal is administratively final.[3]  However, to date, Tran has not been removed to either France or Vietnam.

The government does not dispute that Tran has been held beyond the 90 day removal period set forth in §1231(a)(1) and beyond the presumptively reasonable six month period for removal set by the United States Supreme Court in *Zadvydas*.  Similarly, the government does not dispute that Tran's removal is not reasonably foreseeable at this time. Rather, in order to justify Tran's continued indefinite detention, the government relies on an alleged exception to the *Zadvydas* ruling which the government contends allows for the indefinite detention of aliens, allegedly like Tran, who, as a result of a mental condition or illness, pose a special danger to the community.

At the government's insistence, and pursuant to 8 C.F.R.  § 241.14(f)[4],

---

[3]The validity of petitioner's removal order is not at issue in this case.  Petitioner challenges only his continued post-removal order detention.

[4]Section 241.14(f) provides as follows:
(f) Detention of aliens determined to be specially dangerous--

(1) Standard for continued detention. Subject to the review procedures provided in this section, the Service shall continue to detain an alien if the release of the alien would pose a special danger to the public, because:

(i) The alien has previously committed one or more crimes of violence as defined in 18 U.S.C. 16;

(ii) Due to a mental condition or personality disorder and behavior associated with that condition or disorder, the alien is likely to engage in acts of violence in the future; and

(iii) No conditions of release can reasonably be expected to ensure the safety of the public.

(2) Determination by the Commissioner. The Service shall promptly initiate review proceedings under paragraph (g) of this section if the Commissioner has determined in writing that the alien's release would pose a special danger to the public, according to the standards of paragraph (f)(1) of this section.

(3) Medical or mental health examination. Before making such a determination, the Commissioner shall arrange for a report by a physician employed or designated by the Public Health Service based on a full medical and psychiatric examination of the alien. The report shall include recommendations pertaining to whether, due to a mental condition or personality disorder and behavior associated with that condition or disorder, the alien is likely to engage in acts of violence in the future.

Tran was evaluated by various physicians, psychologists and psychiatrists in an attempt to prove that, if released, Tran's mental condition would likely cause him to engage in future acts of violence and that no conditions of release could reasonably be expected to insure the safety of the public.

Thereafter, an immigration judge found reasonable cause to continue to detain petitioner pending a merits hearing on the government's finding that Tran's release would pose a special danger to the public (see §241.14(h)[5]). On July 22, 2003, Tran was brought before an immigration judge for a "merits hearing" pursuant to 8 C.F.R. §241.14(i)[6]. At

---

(4) Detention pending review. After the Commissioner or Deputy Commissioner has made a determination under this paragraph, the Service shall continue to detain the alien, unless an immigration judge or the Board issues an administratively final decision dismissing the review proceedings under this section.

[5]Section 241.14(h) provides in pertinent part as follows:

(h) Reasonable cause hearing. The immigration judge shall hold a preliminary hearing to determine whether the evidence supporting the Service's determination is sufficient to establish reasonable cause to go forward with a merits hearing under paragraph (i) of this section. A finding of reasonable cause under this section will be sufficient to warrant the alien's continued detention pending the completion of the review proceedings under this section.

[6]Section 241.14(i) provides in pertinent part:

(i) Merits hearing. If there is reasonable cause to conduct a merits hearing under this section, the immigration judge shall promptly schedule the hearing and shall expedite the proceedings as far as practicable. The immigration judge shall allow adequate time for the parties to prepare for the merits hearing, but, if requested by the alien, the hearing shall commence within 30 days. The hearing may be continued at the request of the alien or his or her representative, or at the request of the Service upon a showing of exceptional circumstances by the Service.

(1) Evidence. The Service shall have the burden of proving, by clear and convincing evidence, that the alien should remain in custody because the alien's release would pose a special danger to the public, under the standards of paragraph (f)(1) of this section. The immigration judge may receive into evidence any oral or written statement that is material and relevant to this determination. Testimony of witnesses shall be under oath or affirmation. The alien may, but is not required to, offer evidence on his or her own behalf.

the conclusion of the merits hearing, the immigration judge ruled in petitioner's favor, finding that the government had failed to demonstrate that petitioner's mental condition made him a special danger to the public. Accordingly, the immigration judge dismissed the continued detention review proceedings, implicitly recommending petitioner's release from custody.

On the government's appeal, however, by decision dated May 21, 2004, the Board of Immigration Appeals ("BIA") vacated the immigration judge's ruling. In so doing, the BIA found clear and convincing evidence that Tran previously committed one or more violent crimes, that due to his mental condition he was likely to engage in acts of violence in the future and that the safety of the public could not reasonably be insured by placing conditions on Tran's release. Thus, petitioner remains in BICE custody, being held in the "St. Martinville [sic] Parish Prison Medical Facility." [rec. doc. 11, Ex. A].[7]

## LAW AND ANALYSIS

This case requires this court to consider whether 8 U.S.C. §1231(a)(6), as construed by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), authorizes the continued and potentially indefinite detention of an alien based on a determination by the government that the alien's mental illness makes him specially dangerous to the community. More specifically, this case requires this court to determine

---

[7]The undersigned is unaware of any "Medical Facility" at the St. Martin Parish Prison.

whether §1231(a)(6) as construed by the United States Supreme Court in *Zadvydas* may be construed to permit an exception to the presumptive six month period to effectuate removal set forth in *Zadvydas* for aliens who are deemed specially dangerous to the community as a result of a mental condition or illness. In light of the United States Supreme Court's subsequent decision in *Clark v. Martinez*, 543 U.S. --, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) and the Ninth Circuit's reasoning and holding in *Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2003), the undersigned concludes that the statute does not provide such authority and no exception to the *Zadvydas* rule exists under the facts of this case.

Title 8 U.S.C. §1231(a)(6) provides, in relevant part, as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

In *Clark*, the United States Supreme Court said that, "[b]y its terms, this provision applies to three categories of aliens: (1) those ordered removed who are inadmissible under §1182, (2) those ordered removed who are removable under §1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), and (3) those ordered removed whom the Secretary determines to be either a risk to the community or a flight risk." *Clark*, 125 S.Ct. at 722.

In *Zadvydas*, the Court considered whether §1231(a)(6) authorized continued and indefinite detention of the second category of aliens covered under the statute, that is, removable aliens. The *Zadvydas* Court reasoned that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690, 121 S.Ct. 2491. Applying the constitutional avoidance doctrine in order to avoid this potential problem, *Zadvydas* held that §1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal" and "does not permit indefinite detention." *Id.* at 689, 121 S.Ct. 2491. *Zadvydas* then concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§1231(a)(6) ]." *Id.* at 699, 121 S.Ct. 2491.

In *Clark v. Martinez*, the Court was called upon to decide whether §1231(a)(6) authorized the continued and indefinite detention of the first category of aliens covered under the statute, that is, inadmissible aliens. The Court explained its prior decision in *Zadvydas* as follows:

> [I]n *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Court interpreted this provision to authorize the Attorney General (now the Secretary) to detain aliens in the second category only as long as "reasonably necessary" to remove them from the country. The statute's use of "may," the Court said, "suggests discretion," but "not necessarily ... unlimited discretion. In that respect, the word 'may' is ambiguous." In light of that perceived ambiguity and the "serious constitutional threat" the Court believed to be posed by indefinite detention of aliens who had been admitted

to the country, the Court interpreted the statute to permit only
detention that is related to the statute's "basic purpose [of]
effectuating an alien's removal," "[O]nce removal is no
longer reasonably foreseeable, continued detention is no
longer authorized." The Court further held that the
presumptive period during which the detention of an alien is
reasonably necessary to effectuate his removal is six months;
after that, the alien is eligible for conditional release if he can
demonstrate that there is "no significant likelihood of removal
in the reasonably foreseeable future."

*Clark*, 125 S.Ct. at 722 (citations to the *Zadvydas* opinion omitted).

In determining that *Zadvydas'* construction of §1231(a)(6) applied not only to the

second category of aliens covered by the statute but also to the first, the Court

unequivocally held that "the operative language of §1231(a)(6), 'may be detained beyond

the removal period,' applies without differentiation to *all three* categories of aliens that

are its subject." *Clark*, 125 S.Ct. at 722-723 (emphasis added). Furthermore, the Court

noted that "it is not a plausible construction of §1231(a)(6) to imply a time limit as to one

class but not to another. The text does not admit of this possibility." *Id.*, 125 S.Ct. at 723.

Writing for the Court, Justice Scalia explained that this is the case because "[t]o give

these same words ('may be detained beyond the removal period') a different meaning for

each category would be to invent a statute rather than interpret one." *Id.*, 125 S.Ct. at

722-723. Thus, because the operative statutory text provides for no distinction between

the first two categories of aliens covered by the statute, the *Clark* Court found that the

statute, and the presumptive six month removal period set forth in *Zadvydas,* applied

equally and uniformly to both categories. The Court was clear in its belief that the statute

could not be read to authorize indefinite detention of one category of aliens covered by the statute and at the same time be read to authorize less than indefinite detention of another category of aliens covered by the same statute. *Id.*, 125 S.Ct. at 723.

The Court in *Clark* did not interpret the statute with respect to the third category of aliens covered under the statute, whom, like petitioner, the Secretary has determined to be a risk or special danger to the community. However, the *Clark* holding and reasoning necessarily applies equally to this third category of aliens. The operative statutory text ("may be detained beyond the removal period") makes no distinction between any of the three categories of aliens that are its subject. Specifically, there is no distinction between either the first or second category of aliens and the third category of aliens covered under the statute. Therefore, under the clear language and reasoning of *Clark*, the statute, and the presumptively reasonable six month period set forth in *Zadvydas*, must apply equally and uniformly to all three categories of aliens covered under the statute. Indeed, in the above quoted passages, the *Clark* Court expressly said that the operative language providing for potentially indefinite detention applied "without differentiation" to all three categories of aliens. *Id.*, 125 S.Ct. at 722-723.

In light of the above cited language from the *Clark* opinion, no "special circumstances" exception can be read into the statute as the government suggests. To the contrary, doing so would "invent a statute rather than interpret one." *Clark*, 125 S.Ct at 722-723. The *Clark* Court repeatedly explained that the *Zadvydas* opinion relied on

principles of statutory construction, the constitutional avoidance principle and the principle that the same statutory text cannot be given different meanings in different contexts or cases. This is so even when the statutory purpose and the constitutional concerns present for one category of aliens covered under the statute are not present for another category of aliens covered under the statute.[8] *Clark*, 125 S.Ct. at 723-724.

The *Zadvydas* Court was faced with two plausible constructions of the operative statutory text, one authorizing discretionary indefinite detention and the other authorizing less than indefinite detention. In order to avoid the constitutional problems associated with indefinite detention of admitted aliens (the second class covered under the statute), the Court interpreted the statute as not permitting indefinite detention of <u>any</u> alien covered under the statute. Rather, the statute, as construed by the Court, was to be applied equally and uniformly to all aliens which are its subject, whether or not the same constitutional concerns are present for each category of alien covered. To hold otherwise, the Court said, would establish "the dangerous principle that judges can give the same statutory text different meanings in different cases." *Clark*, 125 S.Ct. at 727. This, the

---

[8]The Court explained that giving "a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation" is the norm. "The lowest common denominator, as it were, must govern." *Clark*, 125 S.Ct. at 723-724 citing *Leocal v. Ashcroft*, 543 U.S. ----, 125 S.Ct. 377, 384, n. 8, 160 L.Ed.2d 271 (2004). In other words, when deciding which of two plausible statutory constructions to adopt, if one construction "would raise a multitude of constitutional problems, the other should prevail--whether or not those constitutional problems pertain to the particular litigant before the Court." *Id.* at 724.

Indeed, the same constitutional concerns present in the context of admitted resident aliens (aliens in the second category) at issue in *Zadvydas* were not present in the context of inadmissible aliens (aliens in the first category) at issue in *Clark*. Historically, admitted resident aliens have been held to have greater constitutional protection than do inadmissible aliens. Nevertheless, the Court found the same statutory construction applicable to both categories of aliens.

Court declined to do.

Without any reference to the *Clark* decision, the government nevertheless contends that this court should recognize an exception to the *Zadvydas* rule for aliens such as Tran who allegedly fall into the third category of aliens covered by the statute.[9] The government relies on the following two passages from the *Zadvydas* decision which it alleges create an exception to the rule of *Zadvydas* for aliens determined by the Secretary to be a risk to the community, and therefore allows petitioner's continued indefinite detention:

> A statute permitting indefinite detention of an alien would
> raise a serious constitutional problem...And this Court has
> said that government detention violates [the Due Process]
> Clause unless the detention is ordered in a *criminal*
> proceeding with adequate procedural protection or, in certain
> special and "narrow" non-punitive "circumstances," (citation
> omitted) where a special justification, (citation omitted) such
> as harm-threatening mental illness, outweighs the
> "individual's constitutionally protected interest in avoiding
> physical restraint."

*Id.* at 690, 121 S.Ct. at 2499 (emphasis in original).

> [W]e nowhere deny the right of Congress to remove aliens, to
> subject them to supervision with conditions when released
> from detention, or to incarcerate them where appropriate for
> violations of those conditions. (citation omitted)...Rather, the
> issue we address is whether aliens that the government finds

---

[9]Frankly, the undersigned is at a loss to understand why the government did not even mention the Supreme Court's decision in *Clark* in its brief when that case is so clearly pertinent. Since the *Clark* decision was rendered on January 12, 2005, and the government's memorandum was filed slightly over a month later, perhaps counsel for the government was unaware of the *Clark* decision. However, that does not explain why the government did not seek leave to file a sur-rebuttal to the petitioner's reply brief filed on March 31, 2005 which strenuously argued that *Clark* was controlling.

> itself unable to remove are to be condemned to an indefinite
> term of imprisonment within the United States.
>
> Nor do the cases before us require us to consider the political
> branches' authority to control entry into the United States.
> Hence we leave no unprotected spot in the Nation's armor.
> (citation omitted). Neither do we *consider terrorism or other
> special circumstances* where special arguments might be
> made for forms of preventive detention and for heightened
> deference to the judgements of the political branches with
> respect to *matters of national security.*

*Id.* at 695-696, 121 S.Ct. 2491 (emphasis added).

The government further argues that the exception which it urges this court to find

to the *Zadvydas* rule has been recognized by four circuit courts of appeal, in the following

cases: *Rosales-Garcia v. Holland*, 322 F.3d 386, 414 (6th Cir. 2003); *Benitez v. Wallis*,

337 F.3d 1289, 1299-1301 (11th Cir. 2003); *Borrero v. Aljets*, 325 F.3d 1003, 1007 (8th

Cir. 2003); and *Xi v. INS*, 298 F.3d 832, 839 (9th Cir. 2002). A review of these cases,

however, fails to support the government's argument.

In *Rosales-Garcia*, the court actually *held* that the two Mariel Cuban petitioners,

who had been held beyond the presumptively permissible six month period, should be

released on parole. Thus, the government's argument that this case supports its position

that petitioner herein may be permissibly detained indefinitely is puzzling at best. The

language quoted by the government appears in the decision, but forms no basis for the

court's decision; the court in *Rosales-Garcia* in no way suggested that the rationale set

forth by the government to justify the continued indefinite detention of Tran in this case

was a "special and narrow non-punitive circumstance" which would warrant indefinite

detention.

In *Benitez*, the court was not faced with the issue presented here. Rather, the court held that "inadmissible aliens" did not come within the *Zadvydas* rule. Again, the language quoted by the government appears in the case as a quote from *Zadvydas*, but forms no part of the rationale for the court's ruling. In fact, the Supreme Court granted *certiorari* in *Benitez* and reversed, *sub nom Clark v. Martinez*.[10]

In *Borrero*, again, the language relied upon by the government is simply quoted from *Zadvydas* and is not used by the court to support the government's argument here. The quoted language *was* used by the court in partial support for the court's holding, that is, that inadmissible aliens did not come within the *Zadvydas* rule. Unfortunately for the government's position in this case, the decision of the Supreme Court in *Clark* overruled *Borrero*.[11]

Finally, in *Xi*, again, an inadmissible alien sought relief from indefinite detention. The Ninth Circuit, unlike the Sixth and Eleventh Circuits, held that inadmissible aliens, like admitted resident aliens, came within the *Zadvydas* rule. In this regard, the Ninth Circuit correctly predicted the Supreme Court's later holding in *Clark*. Again, the language cited by the government, a quote from *Zadvydas*, was not relied on as a part of the court's rationale for its holding. In fact, the court pointed out that Congress had, just months after *Zadvydas* was handed down, passed legislation providing for the mandatory detention of suspected terrorists. Of course, the Congress *did not* pass legislation dealing

---

[10]The undersigned notes that the government cited *Benitez* without informing the court that the case was reversed by the Supreme Court, although not on the point relied upon by the government herein.

[11]Which the government also did not call to the court's decision.

13

with aliens situated as is petitioner here.

In short, the jurisprudential authority relied upon by the government simply does not support its position.

As the government recognizes, the Ninth Circuit is the only circuit court which has considered the precise issue presented herein, that is, whether the Supreme Court's construction of §1231(a)(6) in *Zadvydas* (and now *Clark*) permits an exception for continued and potentially indefinite detention of aliens deemed specially dangerous due to an alleged mental condition or illness. *Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004), rehearing and rehearing *en banc* denied, 389 F.3d 967 (9th Cir. 2004).

In *Thai* the Ninth Circuit thoroughly examined the same two passages in the *Zadvydas* opinion which the government relies on herein in support of its argument that a "special circumstances" exception exists under the statute so as to allow the continued indefinite detention of petitioner. The facts in *Thai* are virtually identical to those presented here. The court in *Thai* framed the issue before the court thusly:

> This case requires us to consider whether 8 U.S.C. §1231(a)(6) as construed by the Supreme Court in *Zadvydas v. Davis*...authorizes the continued and potentially indefinite detention of an alien based on a determination that the alien's mental illness makes him specially dangerous to the community. We conclude that the statute does not provide such authority.

*Id.* at 791-792.

The court rejected the same argument made by the government here, that is, that 8 C.F.R. §241.14(f) allowed the continued indefinite detention of the alien, and that this regulation, promulgated about five months after *Zadvydas* was handed down, was

constitutionally permissible under *Zadvydas* because the regulation only provided for the indefinite detention of aliens in "special and narrow non-punitive circumstances" where a special justification such as "harm-threatening mental illness" outweighed the alien's constitutionally protected interest in avoiding potentially indefinite detention. *Id.* at 794.

The court in rejecting the government's argument noted that the passage from *Zadvydas* relied upon by the government was not used by the Supreme Court to describe the scope of the government's authority under §1231(a)(6), but was rather simply re-stating settled constitutional principles and explaining that the government's ability to detain individuals is generally subject to due process limitations. *Id.* at 795. The court in *Thai* summarized its dismissal of the government's argument in the following terms:

> In sum, despite the government's contentions to the contrary, the reference in *Zadvydas* to special justifications in harm-threatening mental illnesses was not a statement of what §1231(a)(6) authorizes. It was instead, an explanation of why the court felt it was necessary to construe the statute narrowly.

*Id.* at 795.

The government here also points to what it refers to as the "harm threatening mental illness" exception in *Zadvydas*. [rec. doc. 11, pg. 14]. The government argues that this "exception" to the *Zadvydas* rule is allowed because a "special justification", which the government contends was recognized in *Zadvydas*, exists for the harm-threatening mentally ill. According to the government's argument, this is a "special circumstance" recognized by *Zadvydas*. *Zadvydas*, 121 S.Ct. at 2502.

The Supreme Court in *Zadvydas* said that the case did not require the Court

> ...to consider the political branches' authority to control entry
> into the United States. Hence, we leave no "unprotected spot
> in the Nation's armor." (citations omitted). Neither do we
> consider terrorism or other special circumstances where
> special arguments may be made for forms of preventative
> detention and for heightened deference to the judgments of
> the political branches with respect to matters of national
> security.

*Id.* at 2502.

The court in *Thai* correctly noted that the government had lifted the phrase "special circumstances" out of context. In *Thai,* the court said that a simple reading of the quoted passage makes it clear that the court in *Zadvydas* was referring to "special circumstances" in matters of national security, like terrorism, which calls for heightened deference to the political branches of government.

The undersigned agrees with the Ninth Circuit in its reading of *Zadvydas.* The phrase "special circumstances" must be read in context in order to understand its meaning. To take that phrase out of context, as the government seeks to do, is simply impermissible.

Finally, the facts in all of these cases require the same result. The petitioners in *Zadvydas* (Ma and Zadvydas) were both violent criminals as was the petitioner in *Thai.*[12] The *Zadvydas* Court however, specifically said that §1231(a)(6) simply did not authorize

---

[12]Zadvydas had a long criminal record involving drug crimes, attempted robbery, attempted burglary and theft. He also had a history of flight from both criminal and deportation proceedings. *Zadvydas,* 121 S.Ct. at 2496. Ma had been convicted of manslaughter. *Zadvydas,* 121 S.Ct. at 2496.
Thai had been convicted of assault, harassment and third-degree rape. *Thai,* 366 F.3d at 792.

indefinite detentions even if the detentions were premised on "protecting the community from dangerous aliens." *Zadvydas,* 121 S.Ct. at 2502.

The only factual difference between the petitioners in *Zadvydas* and the petitioner in *Thai* (and indeed petitioner herein) is the additional allegation that the "dangerousness" is as a result of a mental condition. However, as the court recognized in *Thai,* the presence of a personality disorder in petitioner does not transform the case into a matter of national security as that term was used in *Zadvydas* such that "special circumstances" may exist. *Thai,* 366 F.3d at 797. As the court said in *Thai:*

> Simply speaking, an alien's mental health when coupled with dangerousness cannot justify indefinite detention under *Zadvydas* when dangerousness alone cannot justify such detention.

*Id.* at 798.

The government in this case does not seek to distinguish *Thai.* Rather, the government relies on the "well-reasoned dissent" from the denial of the government's petition for re-hearing *en banc* written by Judge Kozinski.[13] *Thai v. Ashcroft,* 389 F.3d 967 (9th Cir. 2004). The government argues that the reasoning in Judge Kozinski's dissent should be adopted by this court rather than the reasoning of the panel decision. In essence, Judge Kozinski argues that the "comprehensive set of regulations" found at 8 C.F.R. § 241.13-.14 narrowed the broad scope of §1231(a)(6) so as to bring it within the confines of the Due Process Clause as interpreted in *Zadvydas. Id.* at 968.

---

[13]Circuit Judges Tallman, Bybee, Callahan and Bea joined in the dissent.

Judge Kozinski's dissent, and the government's argument, has some appeal. The regulations are quite detailed and are obviously designed to comport with procedural due process requirements. Judge Kozinski's argument that the substantive due process violations found by the court to exist in *Zadvydas* were remedied by the fact that indefinite detention for being "specially dangerous" required the participation of three executive departments[14] is less convincing. *Id.* at 969.

Given the Supreme Court's pronouncement in *Clark*, however, the undersigned must agree with the reasoning of the panel decision, and the result in *Thai*. The *Clark* decision, which emphasized that the *Zadvydas* decision rested on principles of statutory construction and constitutional avoidance, fully supports the Ninth Circuit's panel decision. For these reasons, the government's arguments are unavailing, notwithstanding Judge Kozinski's dissent.[15]

The *Clark* Court indicated that Congress should remedy any problems encountered in the Court's construction of §1231(a)(6) by creating a different statutory provision authorizing continued detention of "specially dangerous" aliens.[16] *Clark*, 125 S.Ct. at 727 and fn. 8; see also *Id.* at 723 and fn.4. Indeed, the Court noted that Congress had done

---

[14]Department of Homeland Security, Department of Health and Human Services and Department of Justice.

[15]Interestingly, the government apparently did not apply to the Supreme Court for a writ of *certiorari* in *Thai*, even with the vigorous dissent.

[16]In discussing the government's stated fear that the security of our borders will be compromised if inadmissible aliens who cannot be removed are released into our country, the *Clark* Court stated as follows: *"If that is so, Congress can attend to it.* But for this Court to sanction indefinite detention in the face of *Zadvydas* would establish within our jurisprudence, *beyond the power of Congress to remedy*, the dangerous principle that judges can give the same statutory text different meanings in different cases." *Clark*, 125 S.Ct. at 727 (emphasis added).

just that in enacting 8 U.S.C. §1537(b)(2)(C) applicable to alien terrorists, and in enacting portions of the USA PATRIOT Act[17], which authorized the continued detention of aliens who present a national security threat or have been involved in terrorist activities for renewable six month periods, less than four months after the release of the *Zadvydas* opinion. *Clark*, 125 S.Ct. at 723 and fn. 4 and 727 and fn.8.

The government argues that it is unnecessary for Congress to enact further legislation applicable to aliens who are determined by the Secretary to pose a special danger to the community based on an alleged mental state or condition because this "void" was filled by the Department of Homeland Security's promulgation of 8 C.F.R. §241.14, enacted following the *Zadvydas* opinion. In support, the government argues that "[n]otably, the *Zadvydas* Court did not indicate that only Congress was permitted to address what was left open by its decision." [rec. doc. 11, pg. 17 at fn. 6].

However, the Court in *Clark* clearly affirmed its prior statutory construction of §1231(a)(6) first made in *Zadvydas*. The United States Supreme Court has clearly said, twice, that §1231(a)(6) does not allow for indefinite detention. Moreover, having concluded that §1231(a)(6) does not authorize Tran's continued detention, the civil commitment regulation, 8 C.F.R. §241.14, promulgated by the Department of Homeland Security, which was enacted under the authority of that statute, cannot authorize Tran's continued and indefinite detention. *Thai*, 366 F.3d at 798-799. When a federal regulation

---

[17] 8 U.S.C. § 1226a(a)(6). The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, § 412(a), 115 Stat. 350 (enacted Oct. 26, 2001).

conflicts with the plain meaning of a federal statute, the regulation is invalid. *Thai*, 366 F.3d at 798-799 citing *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002) and *Microsoft Corp. v. Comm'r*, 311 F.3d 1178, 1189 (9th Cir. 2002); see also *Nalle v. Comm'r*, 997 F.2d 1134 (5th Cir. 1993) (holding a Treasury Regulation invalid because it contradicted the plain meaning of a federal statute); *Chemical Mfrs. Assn'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107 (1985); *Scofield v. Lewis*, 251 F.2d 128, 132 (5th Cir. 1958). A federal regulation cannot empower the government to do what a federal statute prohibits it from doing. *Thai*, 366 F.3d at 798 citing *Public Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1031 (9th Cir. 2003).

In enacting §1231(a)(6), Congress chose to treat all three categories of aliens which are its subject the same. The Supreme Court chose to interpret the statute to avoid a constitutional collision on two separate occassions. This court cannot choose to ignore the language of the statute or the holdings of the Supreme Court construing that statute. Should Congress decide that different treatment of specially dangerous aliens who allegedly suffer from mental illness is in order, Congress can amend the statute, subject to constitutional limitations, or can enact a different statute specifically addressing continued and potentially indefinite detention of this category of aliens as it has done in the case of alien terrorists. However, this court cannot rewrite the statute as the government suggests. That decision lies within the legislative prerogative.

## CONCLUSION

Because the government does not dispute that Tran has been held beyond the 90 day removal period set forth in §1231(a)(1) and that Tran has been held beyond the presumptive six month period prescribed in *Zadvydas* or that Tran's removal is not reasonably foreseeable at this time, Tran's continued post-removal federal detention is not authorized by 8 U.S.C. §1231(a)(6). Therefore, **IT IS RECOMMENDED** that Tran's petition for *habeas corpus* relief should be **GRANTED**, and accordingly, Tran should be released from federal detention under an order of supervision on conditions that the government believes are appropriate under the circumstances.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association*, 79**

F.3d 1415 (5th Cir. 1996).

      **THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this _22_

day of _____July_____, 2005.

                        **C. MICHAEL HILL**
                        **UNITED STATES MAGISTRATE JUDGE**

COPY SENT
DATE 7-22-05
BY abr
TO OTLM
CMH

22